**Gregory Carl GREEN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–09–00338–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 12, 2011.

Mary Lou Shipley, Waxahachie, for appellant.

Joe F. Grubbs, Cynthia W. Hellstern, Waxahachie, for state.

Panel consists of Justices ANDERSON, FROST, and SEYMORE.

## PLURALITY OPINION

JOHN S. ANDERSON, Justice.

A jury found appellant, Gregory Carl Green, guilty of the first degree felony offense of failure to comply with sex offender registration requirements. *See* Code Crim. Proc. Ann. arts. 62.102(b)(3), 62.102(c) (West 2006). The jury assessed punishment at eight years' confinement in the Institutional Division of the Texas Department of Criminal Justice. We previously considered this case, and reversed appellant's conviction and remanded for a new trial. The Court of Criminal Appeals vacated our judgment and remanded for reconsideration in light of new precedent.

### FACTUAL AND PROCEDURAL BACKGROUND

Sergeant Rodney Guthrie of the Waxahachie Police Department, who supervis-

es and manages the sex offender registration unit in Waxahachie, testified he is familiar with appellant because appellant is a registered sex offender in Sergeant Guthrie's unit. As a sex offender with two or more prior convictions, appellant was required to report to Sergeant Guthrie every 90 days. *See* Tex.Crim. Proc.Code Ann. art. 62.058(a) (West 2006). The first time appellant registered with Sergeant Guthrie was September 8, 2005. At that time, appellant listed his address as 801 Dunn Street—his parents' residence. The next time appellant provided a change in address was November 16, 2006. Appellant listed his address as 602 Highland Avenue. On May 2, 2007, Sergeant Guthrie received a telephone call from appellant informing him appellant would be changing his address. On May 3, 2007, appellant came into Sergeant Guthrie's office and gave notice that he was changing his address to 1570 Holder Road. Sergeant Guthrie reminded appellant that pursuant to the Texas Code of Criminal Procedure he must stay at the Highland Avenue address for seven days before moving to the Holder Road address. At first, appellant replied he could stay at the Highland Avenue address only one to two days and then he admitted that he had already moved from the Highland Avenue address and was staying with his parents on Dunn Street. Sergeant Guthrie told appellant he was in violation of the registration requirements. As far as Guthrie can remember, appellant did not provide Guthrie with any reason for his move to 602 Highland.

After this meeting, Sergeant Guthrie contacted Billy Graham, the property manager for the landlord at 602 Highland Avenue. Graham told Guthrie that appellant and his wife had moved out of 602 Highland Avenue on or around April 15, 2007. Furthermore, Graham informed Sergeant Guthrie that a new tenant moved into the Highland Avenue residence on April 20, 2007. Sergeant Guthrie also testified he was aware appellant worked intermittently in Arizona for long periods of time and had recommended that appellant register in Arizona. Appellant complied. The Arizona records, entered into evidence, indicate appellant registered in Arizona for employment purposes on April 18, 2007. The Arizona records did not indicate appellant was permanently moving to or living in Arizona.

Billy Graham, the property manager for 602 Highland Avenue, explained to the jury that he never actually saw appellant or his wife move out of the house. Graham testified that he went to the house on or about April 15, 2007, to collect the rent and found the house abandoned, aside from some trash and items of furniture left outside. Graham assumed appellant and his wife had moved and Graham rented the house to a new tenant on April 20, 2007. Graham testified appellant had done yardwork on the Highland Avenue property sometime in March or April of 2007. Graham explained that all of the rent checks he received for 602 Highland during the time appellant and his wife lived at that address came either from appellant or appellant's parents.

The defense called Catherine Hunt, appellant's wife, as its only witness. Hunt testified she and appellant moved into 602 Highland Avenue the week before Thanksgiving 2006. Hunt explained appellant spent long periods of time working in Arizona. At some point, while they were living at 602 Highland Avenue, Hunt became pregnant. Hunt testified she was thinking about moving from the property, but appellant did not want to move because he liked their home at 602 Highland Avenue. Hunt said that while appellant was out of town working, he would send her money to pay the bills. Hunt told the

jury appellant went to work in Arizona on April 11, 2007. Hunt explained that on April 16, 2007, five days after appellant left, she delivered their baby. After delivering the baby, Hunt decided to move from the 602 Highland Avenue residence into her parents' home on Holder Road. Hunt testified she did not tell appellant about the move. Hunt explained appellant returned from Arizona on April 28, 2007; however, on cross-examination, Hunt testified appellant came back into town April 20, 2007, left again on April 24, 2007, and returned on April 30, 2007. Hunt was unaware of when appellant found out she had moved their belongings from the Highland Avenue address. Hunt testified she never told appellant that she had moved from the Highland Avenue address into her parents' house; however, on cross-examination Hunt testified she informed appellant of the move on April 30, 2007. Hunt explained she knew appellant met with Sergeant Guthrie on May 3, 2007, because that was the day she discovered "he was going to get charged."

A jury found appellant guilty of failing to report his intended move not later than the seventh day before the anticipated move date. The jury found the enhancement paragraph in the indictment true and sentenced appellant to eight years' confinement in the Institutional Division of the Texas Department of Criminal Justice.

On appeal, we determined the evidence was factually insufficient to support conviction. After issuing our opinion, the Court of Criminal Appeals issued *Brooks v. State*, 323 S.W.3d 893, 894–95 (Tex.Crim.App. 2010) (plurality opinion) abolishing factual sufficiency review as prescribed under *Clewis v. State*. *Howard v. State*, 333 S.W.3d 137, 138 n. 2 (Tex.Crim.App.2011) ("[W]e have abolished factual-sufficiency review."); *Clewis v. State*, 922 S.W.2d 126 (Tex.Crim.App.1996). The State appealed for discretionary review based on *Brooks*. *Green v. State*, No. PD–1685–10, 2011 WL 303818, at *1 (Tex.Crim.App.2011). The Court of Criminal Appeals granted the State's petition and remanded to this court for consideration under the new standard of review for sufficiency of evidence. *Brooks*, 323 S.W.3d at 894–95.

## DISCUSSION

### I. Is the evidence sufficient to support appellant's conviction?

In appellant's first issue, he challenges the factual sufficiency of the evidence. Specifically, appellant contends the evidence is factually insufficient to show he intentionally, knowingly, or recklessly failed to comply with the sex-offender reporting requirements.

### A. Standard of Review

Five judges on the Texas Court of Criminal Appeals have determined that "the *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks*, 323 S.W.3d at 894–95 (plurality opinion).[1] Therefore

---

1. Nonetheless, this does not alter the constitutional authority of the intermediate courts of appeals to evaluate and rule on questions of fact. *See* TEX. CONST. art. V, § 6(a) ("[T]he decision of [courts of appeals] shall be conclusive on all questions of fact brought before them on appeal or error."). Amendment of the Texas Constitution may occur only after

the Legislature has proposed amendments and Texas voters have had the opportunity to vote on them. TEX. CONST. art. XVII, § 1. Therefore, while we acknowledge the Texas Court of Criminal Appeals' general authority to instruct lower courts regarding the standards of appellate review, we respectfully note that it does not have jurisdiction or au-

we review appellant's factual sufficiency issue on appeal under the *Jackson v. Virginia* legal sufficiency standard. *Id.*

In a sufficiency review, we view all evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt. *Salinas v. State,* 163 S.W.3d 734, 737 (Tex.Crim.App.2005). The jury, as the sole judge of the credibility of the witnesses, is free to believe or disbelieve all or part of a witness' testimony. *Jones v. State,* 984 S.W.2d 254, 257 (Tex.Crim. App.1998). The jury may reasonably infer facts from the evidence presented, credit the witnesses it chooses to, disbelieve any or all of the evidence or testimony proffered, and weigh the evidence as it sees fit. *Sharp v. State,* 707 S.W.2d 611, 614 (Tex. Crim.App.1986). Reconciliation of conflicts in the evidence is within the jury's discretion and such conflicts alone will not call for reversal if there is enough credible evidence to support a conviction. *Losada v. State,* 721 S.W.2d 305, 309 (Tex.Crim. App.1986). An appellate court may not reevaluate the weight and credibility of the evidence produced at trial and in so doing substitute its judgment for that of the fact finder. *King v. State,* 29 S.W.3d 556, 562 (Tex.Crim.App.2000). Inconsistencies in the evidence are resolved in favor of the verdict. *Curry v. State,* 30 S.W.3d 394, 406 (Tex.Crim.App.2000). We do not engage in a second evaluation of the weight and credibility of the evidence, but only ensure the jury reached a rational decision. *Muniz v. State,* 851 S.W.2d 238, 246 (Tex.Crim.App.1993); *Harris v. State,* 164 S.W.3d 775, 784 (Tex.App.-Houston [14th Dist.] 2005, pet. ref'd.).

**B. Analysis—April 2007 Address Change**

A person commits the offense of failure to comply with registration requirements if the person "is required to register and fails to comply with any requirement" of Chapter 62. Code Crim. Proc. Ann. art. 62.102 (West 2006). Under article 62.055(a), "[i]f a person required to register under this chapter intends to change address, . . . the person shall, not later than the seventh day before the intended change, report in person to the local law enforcement authority designated as the person's primary registration authority by the department and to the . . . officer supervising the person and provide the authority and the officer with the person's anticipated move date and new address." Tex.Crim. Proc.Code Ann. art. 62.055(a) (West Supp. 2010). Under the indictment, appellant was charged with failing to comply with this registration requirement ("Requirement"). Under article 62.055(a), appellant was also required to provide proof of his new address to the applicable local law enforcement authority for his new address within seven days after changing the address or on the first date that the applicable authority allows appellant to report. *See id.* However, appellant was not charged with violating this registration requirement. Appellant was only charged with violating the Requirement.

There is no dispute concerning whether appellant was required to register or whether appellant failed to comply with a registration requirement. The only issue is whether the State proved appellant intentionally, knowingly, or recklessly failed to register his intended address change. *See Reyes v. State,* 96 S.W.3d 603, 605 n. 1 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd) (stating that a culpable mental state is required for failure to register viola-

thority to abridge our constitutional mandate.

*See Howard,* 333 S.W.3d at 138 n. 2.

tions). We hold the State failed to meet its burden.

Because appellant did not stipulate to any of his prior convictions for indecency with a child, the State called Officer Robert Allwardt as its first witness. Officer Allwardt gave expert fingerprint identification testimony to show that appellant is the same person convicted three times for indecency with a child in the judgments that the State introduced into evidence. The State had to prove at least two such convictions as part of its burden of proof under the indictment in this case. The State then called Sergeant Guthrie to the stand. In addition to the testimony described above, Sergeant Guthrie testified as follows:

- He is a police officer with the Waxahachie Police Department, who supervises and manages the sex offender registration unit.
- When sex offenders living in Waxahachie first come in to register, they fill out some documentation, and the sex offender registration unit reviews the registration requirements with the offenders so they understand them.
- After his initial registration appellant had a duty to come in person to the unit every 90 days to verify his registration.
- In addition to such periodic verifications, registered sex offenders are also required to come in person to Guthrie's office to give notice of any change in their residence address, employment status, telephone numbers, or emergency contacts.
- As to changes in the residence addresses of registered sex offenders, "[p]rior to any address change that [they] have, [they] must notify the registering agency seven days prior to any change that [they are] going to make."

- Registered sex offenders cannot move whenever they want to do so; rather they "have seven days notification that [they] must give the agency."
- When appellant first registered in Waxahachie in September 2005, Guthrie reviewed several forms with appellant, including a form that specifies the registration requirements that the sex offender must follow ("Form"). Guthrie reviewed all of these requirements with appellant, as shown by appellant initialing each requirement on the form and signing the form, which was admitted into evidence.
- The Form's main reason is to spell out each requirement that the registered sex offender must follow. The Form "specifically says that [appellant] must give seven days prior notice of his move or intended move before making that move."
- Appellant "had to provide the seven days [notice] prior to any move."
- Appellant did not provide seven days prior notice of his move from 602 Highland Avenue to 1570 Holder Road.

In sum, Sergeant Guthrie's testimony covered four topics: (1) appellant's knowledge of the reporting requirements; (2) appellant's prior conformity with all reporting requirements; (3) appellant's visit on May 3 regarding the change in address and Sergeant Guthrie's discovery that appellant had not given notice before this address change; and (4) Guthrie's discussion with Billy Graham. Sergeant Guthrie's testimony shed no light on whether appellant had an intention to move from the Highland Avenue address. The State's final witness was Billy Graham, the property manager at 602 Highland Avenue. Graham testified: (1) he observed appellant landscaping and planting flowers

around the house in March or April 2007; (2) Graham had not received a rent payment for the Highland Avenue address in the month of April, which was not unusual; (3) Graham discovered appellant's and appellant's wife's belongings had been moved from the house—but he did not witness either party moving the belongings; and (4) appellant did not tell Graham he was moving out; and (5) Graham rented the house to another tenant without informing appellant or appellant's wife. Both Guthrie and Graham testified they were aware appellant spent long periods of time working in Arizona.

The testimony at trial shows that Guthrie and the prosecuting attorney both believed that registered sex offenders have to give at least seven days advance notice before any address change. Guthrie testified that appellant was told he had to give seven days prior notice of all address changes. However, the Requirement 1 is triggered only "[i]f a person required to register under this chapter intends to change address." Tex.Crim. Proc.Code Ann. Art. 62.055(a). In addition, the deadline for reporting this intended address change is not seven days before the date on which the move actually occurs; rather, the deadline is seven days "before the intended change." *Id.* There are various situations in which a registered sex offender's address may change without the offender having any intent to change address prior to the actual change of address. The offender may be barred from his current residence without warning or someone else may move the offender's property out of the residence and to another address without the offender's knowledge.

After reviewing the record in this case, we conclude there was no evidence that appellant intentionally, knowingly or recklessly failed to comply with his reporting requirements. Consequently, upon review of the entire record we determine no rational jury could have determined the evidence was sufficient to support a conviction. *See Brooks,* 323 S.W.3d at 894–95.

**C. Analysis—November 2006 Address Change**

The State also contends the jury could have found appellant committed the offense as charged because there was some testimony indicating appellant may have violated the reporting requirements when he initially moved to the Highland Avenue address. Sergeant Guthrie testified appellant reported his change of address on November 16, 2006. However, Graham stated appellant moved into 602 Highland Avenue on November 12, 2006. According to the State's argument, such testimony allows the jury to convict appellant of the alleged violation because the jury charge included "on or about" language. Regardless, for the same reasons the State's evidence is insufficient to show that appellant intended to move from the Highland Avenue address, the evidence is also insufficient to show appellant intentionally, knowingly, or recklessly failed to report an intended move to the Highland Avenue address. However, Guthrie indicated in his testimony that appellant complied with the reporting requirements when he moved to the Highland Avenue address in November 2006. In addition, for the same reasons stated above as to the April 2007 change of address, the evidence was insufficient to prove that appellant failed to report an intended address change in November 2006.

The majority of the testimony, evidence and arguments made during trial concern the failure to report the move that occurred in April 2007. The witnesses only briefly discussed the November move and the State merely mentioned it in passing during its closing argument. Sergeant

Guthrie only discussed November briefly and testified appellant had complied with the registration requirements. The first time the jury heard mention of any dates regarding the November move was in the context of appellant following the registration requirements. He did not testify to seeing appellant living at the house on November 12, 2006. Hunt stated she moved into the house the week before Thanksgiving. The evidence concerning the November move is insufficient to justify a conviction. We reach this conclusion based upon the objective basis in the record that there was no evidence appellant ever had an intent to change his address in November 2006 that he failed to report not later than the seventh day before the date of the intended address change.

Accordingly, we sustain appellant's first issue. If, under the review set forth in *Jackson v. Virginia*, we determine a reasonable factfinder would necessarily entertain reasonable doubt about the defendant's guilt, due process requires us to reverse and order a judgment of acquittal. *Id.; Swearingen v. State*, 101 S.W.3d 89, 95 (Tex.Crim.App.2003).

Because we have resolved the appeal with consideration of the first issue, we do not reach appellant's second issue. *See Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim.App.2005); Tex.R.App. P. 47.1.

### CONCLUSION

Having sustained appellant's first issue, we reverse and render a judgment of acquittal of appellant.

FROST, J., and SEYMORE, J., Concurring.

KEM THOMPSON FROST, Justice, concurring.

I respectfully disagree with my esteemed colleagues' descriptions of the Court of Criminal Appeals's decision in *Brooks v. State*. *See* 323 S.W.3d 893, 894–912 (Tex.Crim.App.2010) (plurality op.); *id.*, 323 S.W.3d at 912–26 (Cochran, J., concurring). I write separately to address this important decision and to respond to the assertion that the Court of Criminal Appeals lacks jurisdiction and authority to abolish factual-sufficiency review of findings that a defendant is guilty of a criminal offense that the State is required to prove beyond a reasonable doubt. I also disagree with the plurality's departure from this court's analysis in the opinion on original submission and statements in the plurality opinion that contradict a recent opinion from the Court of Criminal Appeals.

### I. ABOLITION OF FACTUAL-SUFFICIENCY REVIEW OF CONVICTION FINDINGS

The *Brooks* decision marked a turning point in Texas jurisprudence regarding sufficiency-of-the-evidence review of criminal convictions. A historical overview is appropriate to put the *Brooks* decision in context.

### A. Historical Overview

For nine decades, from 1891 until September 1, 1981, the Court of Criminal Appeals had exclusive appellate jurisdiction over criminal cases, and the intermediate courts of appeals did not have criminal jurisdiction. *See* TEX. CONST. art. V, § 5 (amended 1981, 2001); *id.* art. V, § 6 (amended 1978, 1981, 1985, 2001). During this period, the Texas Constitution provided that "the decision of [courts of civil appeals] shall be conclusive on all questions of fact brought before them on appeal or error" (hereinafter, "Factual Conclusivity Clause"). *Id.* Therefore, until September 1981, the Factual Conclusivity Clause could not possibly have limited the jurisdiction of the Court of Criminal Appeals because that provision served only as

a limitation on the jurisdiction of the Supreme Court of Texas *vis á vis* the courts of civil appeals. *See id.;* TEX. CONST. art. V, § 5 (amended 1981, 2001); *Choate v. San Antonio & A.P. Ry. Co.,* 91 Tex. 406, 44 S.W. 69, 69–70 (1898). During this period, the Texas Legislature provided by statute that "the Court of Criminal Appeals may reverse the judgment in a criminal action, as well upon the law as upon the facts." [1] *See Bigby v. State,* 892 S.W.2d 864, 874 n. 5 (Tex.Crim.App.1994) (quoting article 848 of the 1950 Code).

There is disagreement as to whether, during this period, the Court of Criminal Appeals reversed any criminal convictions because the finding of guilt was so against the great weight and preponderance of the evidence as to be manifestly unjust.[2] What is not disputed is that from 1891 through 1978, whether the Court of Criminal Appeals found the evidence legally insufficient [3] or factually insufficient, the only available remedy was reversal and remand for a new trial; rendition of an acquittal was not an option. *See Colunga v. State,* 481 S.W.2d 866, 869 (Tex.Crim. App.1972); *Watson v. State,* 204 S.W.3d 404, 432 (Tex.Crim.App.2006) (Cochran, J., dissenting). In 1978, the United States Supreme Court held that, if the evidence at trial is legally insufficient to support a defendant's conviction in state court, then the defendant is entitled to rendition of a judgment of acquittal under the Double Jeopardy Clause. *See Burks v. United States,* 437 U.S. 1, 17–18, 98 S.Ct. 2141, 2150–51, 57 L.Ed.2d 1 (1978); *Greene v. Massey,* 437 U.S. 19, 24, 98 S.Ct. 2151, 2154, 57 L.Ed.2d 15 (1978). Following the decisions in *Burks* and *Greene,* the Court of Criminal Appeals, for the first time, began rendering a judgment of acquittal if it determined that the evidence was legally insufficient to support the conviction. *See Pfleging v. State,* 572 S.W.2d 517, 520 (Tex.Crim.App.1978) (op. on reh'g).

The opinions in *Burks* and *Greene* did not address what legal standard should be used to determine whether the evidence is legally insufficient for the purposes of the United States Constitution. *See Burks,* 437 U.S. at 5, 98 S.Ct. at 2144; *Greene,* 437 U.S. at 24–27, 98 S.Ct. at 2154–55. A year later, the United States Supreme Court held that a person convicted in state court is entitled to a judgment of acquittal under the due process protections of the United States Constitution if, after viewing all the evidence in the light most favorable to the prosecution, no reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979).

1. Though the Texas Legislature deleted other language from the relevant statute, the Legislature allowed this language to remain during the period from 1981 though the present. *See* TEX.CODE CRIM. PROC. ANN. art 44.25 (West 2006).

2. *Compare Clewis v. State,* 922 S.W.2d 126, 131 (Tex.Crim.App.1996) (agreeing with Judge Clinton's historical analysis of the Court of Criminal Appeals's power to reverse a judgment for factual insufficiency), *overruled by Brooks,* 323 S.W.3d at 894–912; *id.,* 323 S.W.3d at 912–26, *and Clewis,* 922 S.W.2d at 137–43 (Clinton, J., concurring) (stating that Court of Criminal Appeals reversed convictions during this period based on factual insufficiency of the evidence), *with Brooks,* 323 S.W.3d at 907 (stating that from the time that Texas was a republic in the 1830s until *Clewis* was decided in 1996, the Court of Appeals applied a single standard to determine whether the evidence was sufficient to support the conviction and that this standard was a legal-sufficiency standard).

3. In this opinion, "legally insufficient" means that, viewing all the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

The appearance on the scene of this new remedy of acquittal if the evidence is legally insufficient raised a new issue: *Does Texas law provide a basis for reversing a criminal conviction upon evidentiary-insufficiency grounds other than legal insufficiency?* If so, then there would be a separate insufficiency ground for attacking a conviction which, if successful, would entitle the appellant to reversal and remand for a new trial. In addition, there would be an issue as to the legal standard that courts should use to determine whether the appellant is entitled to a new trial under this theory, which is referred to in this opinion as "factual insufficiency." If Texas law did not allow for appellate courts to reverse based upon factual insufficiency, then the effect of these federal cases would be to change the remedy for legal insufficiency from reversal and remand for a new trial to reversal and rendition of a judgment of acquittal. In this event, the only available evidentiary-sufficiency challenge would be one based upon legal insufficiency.

While these legal developments were unfolding, the Texas Legislature proposed and the people of Texas adopted amendments to the Texas Constitution to give the then-existing courts of civil appeals criminal appellate jurisdiction. *See* TEX. CONST. art. v., § 5 (amended 2001); *id.* art. V, § 6 (amended 1985, 2001). The constitutional amendments, which took effect three decades ago, on September 1, 1981, made the Factual Conclusivity Clause applicable to criminal appeals for the first time. In pertinent part, the amended portions of the Texas Constitution read as follows:

> The Court of Criminal Appeals shall have final appellate jurisdiction coextensive with the limits of the state, and its determinations shall be final, in all criminal cases of whatsoever grade, with such exceptions and under such regulations as may be provided in this Constitution or as prescribed by law.
>
> . . .
>
> Said Court of Appeals shall have appellate jurisdiction co-extensive with the limits of their respective districts, which shall extend to all cases of which the District Courts or County Courts have original or appellate jurisdiction, under such restrictions and regulations as may be prescribed by law. Provided, that the decision of said courts shall be conclusive on all questions of fact brought before them on appeal or error.

TEX. CONST. art. V, §§ 5(a), 6(a). At the same time that these amendments became effective, a revision of article 44.25 of the Code of Criminal Procedure, entitled "Cases remanded," took effect. In revising this article, the Texas Legislature deleted the statutory language that referred to reversals because the verdict is contrary to the evidence. *See Clewis v. State,* 922 S.W.2d 126, 153 (Tex.Crim.App.1996) (McCormick, P. J., dissenting). Despite this revision, article 44.25 continued to provide, as it does to this day, that "the courts of appeals or the Court of Criminal Appeals may reverse the judgment in a criminal action, as well upon the law as upon the facts." TEX.CODE CRIM. PROC. ANN. art 44.25 (West 2006).

In 1990, the Court of Criminal Appeals in *Meraz* concluded that, under article V, section 6 of the Texas Constitution, intermediate courts of appeals have the power to review the factual sufficiency of the evidence regarding a matter that the defendant has the burden of proving by a preponderance of the evidence. *See Meraz v. State,* 785 S.W.2d 146, 154–55 (Tex. Crim.App.1990). In doing so, the *Meraz* court held that the correct standard of review in such circumstances is whether, after considering all the evidence relevant

to the issue at hand, the finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *See id.* at 155. The *Meraz* court also reached the following conclusions:

- If an intermediate court of appeals concludes that the evidence is factually insufficient under this legal standard, then the proper remedy is to reverse the trial court's judgment and remand for a new trial.
- Though the Court of Criminal Appeals has the power to set the standard of review for this type of factual-sufficiency review, the Factual Conclusivity Clause precludes the Court of Criminal Appeals from reviewing whether a finding on a matter that the defendant must prove is so against the great weight and preponderance of the evidence so as to be manifestly unjust.
- Several prior cases were overruled because in those cases the court incorrectly determined that courts of appeals did not have conclusive jurisdiction regarding "questions of fact" concerning the proof of an issue on which the defendant has the burden of proof and the burden of persuasion.
- The Court of Criminal Appeals was not constitutionally authorized to adopt a standard of review for the court of appeals concerning an evidentiary review of the insanity defense that was inconsistent with article V, section 6 of the Texas Constitution.

*See Meraz,* 785 S.W.2d at 149–55. The *Meraz* court did not address whether the courts of appeals have the power to review the factual sufficiency of the evidence regarding fact findings on matters that the State had the burden of proving beyond a reasonable doubt (hereinafter, "Conviction Findings"). *See id.* at 153. In fact, the *Meraz* court stated that reviewing findings upon which the defendant had the burden

of proof for factual sufficiency was "mutually exclusive" from reviewing Conviction Findings to determine if they are supported by "sufficient evidence." *Id.* The *Meraz* court did make a general statement that "the court of appeals is therefore constitutionally given the authority to determine if a jury finding is against the great weight and preponderance of the evidence and if this is improper it is up to the people of the State of Texas to amend the Constitution." *Id.* at 154. But, given that the *Meraz* court limited its inquiry to matters that the defendant had to prove by a preponderance of the evidence, this statement is limited to such matters. *See id.* at 153, 155. The *Meraz* court did not address whether the intermediate courts of appeals have the power to review whether factually sufficient evidence supports Conviction Findings. *See id.*

Six years later, the Court of Criminal Appeals concluded that intermediate courts of appeals do have this power. *See Clewis v. State,* 922 S.W.2d 126, 129–36 (Tex.Crim.App.1996). The *Clewis* court did not determine that this power arises from the Factual Conclusivity Clause; rather, the *Clewis* court concluded that the people of Texas gave the courts of appeals this power by the general grant of "appellate jurisdiction co-extensive with the limits of [the courts of appeals's] respective districts." TEX. CONST. art. V, § 6(a); *see Clewis,* 922 S.W.2d at 130 & n. 3. Therefore, in addition to holding that an appellant may seek reversal and a rendition of acquittal based upon legal insufficiency, the *Clewis* court held that an appellant may seek reversal and a new trial based upon the alleged factual insufficiency of the evidence to support the Conviction Findings. *See id.* at 128–29, 134. The *Clewis* court held that, in reviewing the factual sufficiency of Conviction Findings, appellate courts should view all the evi-

dence without the prism of "in the light most favorable to the prosecution" and should reverse the conviction only if it is "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Id.* at 129. The *Clewis* court stated that, whether the evidence is legally sufficient to support a conviction is a question of law, and that whether the evidence is factually sufficient to support a conviction is a question of fact.[4] *See id.* at 132–33.

## B. The *Brooks* Decision

After the Court of Criminal Appeals modified the legal standard for factual sufficiency of the evidence to support a conviction at various times between 1996 and 2010, a majority of the judges on the Court of Criminal Appeals determined in *Brooks* that "the *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks,* 323 S.W.3d at 894–95; *id.,* 323 S.W.3d at 912–13 (Cochran, J., concurring). Now, in the aftermath of the *Brooks* decision, legal sufficiency is the only standard that reviewing courts may apply in determining whether the evidence is sufficient to support Conviction Findings. *See id.* at 895, 904–05; *id.* at 912–13 (Cochran, J., concurring). And, the only remedy that is available if the evidence is legally insufficient is reversal and rendition of a judgment of acquittal. *See id.* at 895, 904–05; *id.* at 912–13 (Cochran, J., concurring). The five judges in *Brooks* agreed that *Clewis* was being overruled and that factual-sufficiency review, with its potential remedy of a new

trial, is no longer available in reviewing Conviction Findings. *See id.* at 895, 904–05; *id.* at 912–13 (Cochran, J., concurring). In *Brooks,* the Court of Criminal Appeals abolished factual-sufficiency review as to Conviction Findings. *See Howard v. State,* 333 S.W.3d 137, 138 n. 2 (Tex.Crim. App.2011); *Brooks* at 895, 904–05; *id.* at 912–13 (Cochran, J., concurring). But, significantly, the five judges in *Brooks* did not overrule *Meraz,* and they did not state that the *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support a jury finding on an issue that the defendant must prove by a preponderance of the evidence. *See id.* at 895; *id.* at 924–26 (Cochran, J., concurring); *Bernard v. State,* —— S.W.3d ——, ——, 2011 WL 1375570 (Tex.App.-Houston [14th Dist.] 2011, pet. ref'd) (concluding that the judges in *Brooks* did not overrule the *Meraz* holding that factual-sufficiency review is available as to issues the defendant must prove by a preponderance of the evidence).

## C. The Constitutional Basis of the *Brooks* Decision

The *Brooks* plurality made the following conclusions:

• The *Clewis* factual-sufficiency standard is essentially the *Jackson v. Virginia* legal-sufficiency standard; therefore, the *Clewis* standard violates double-jeopardy principles. *See Brooks,* 323 S.W.3d at 904–05.

• The *Jackson v. Virginia* legal-sufficiency standard is consistent with an intermediate court of appeals's constitutional grant of jurisdiction to review "questions of law" and "questions of fact" under article V, section 6(a) of

---

4. It is not necessary to address all of the reasons given by the *Clewis* majority or to address the analysis in the concurring and dissenting opinions in *Clewis. See Clewis,* 922 S.W.2d at 136–66.

the Texas Constitution and with article 44.25 of the Code of Criminal Procedure, authorizing reversal of criminal convictions "as well upon the law as upon the facts." *See id.* at 908–10 & n. 42.

- Neither the constitutional grant of jurisdiction to courts of appeals to review "questions of fact" nor article 44.25 requires the courts of appeals to use a legal standard other than legal sufficiency under *Jackson v. Virginia* to review the sufficiency of the evidence supporting Conviction Findings. *See id.* at 911.

The *Brooks* plurality indicated that the *Jackson v. Virginia* legal-sufficiency standard involved "questions of law" and "questions of fact" and that reversing a conviction for legal insufficiency would be a reversal upon the law and upon the facts. *See id.* at 908–10. Nonetheless, the *Brooks* plurality indicated that a court of appeals's legal-sufficiency review is not a question of fact conclusive upon the high court under the Factual Conclusivity Clause.[5] *See id.* at 909 & n. 35. The concurring opinion in *Brooks* does not address how abolishing factual-sufficiency review of Conviction Findings is consistent with article V, section 6(a) of the Texas Constitution and article 44.25 of the Code of Criminal Procedure. *See id.* at 912–26 (Cochran, J., concurring). But this issue was raised, and therefore, the fifth judge in *Brooks* implicitly concluded that this abolition of factual-sufficiency review is consistent with these constitutional and statutory provisions.

## D. Vertical Stare Decisis under the Texas Constitution

The Texas Constitution grants intermediate courts of appeals "appellate jurisdiction" in criminal cases in which the trial court has not assessed the death penalty. TEX. CONST. art. V, §§ 5(b), 6(a). In the Texas Constitution, the people of Texas do not expressly state that intermediate appellate courts have any power to reverse a criminal conviction determined to be so against the great weight and preponderance of the evidence so as to be manifestly unjust or under any other specific standard.[6] Even if the justices of this court were to construe article V, section 6 of the Texas Constitution to provide for a separate factual-sufficiency review of Conviction Findings by the courts of appeals, with the remedy for insufficiency being a reversal and remand for a new trial and with the Court of Criminal Appeals having no jurisdiction to review these sufficiency determinations, the Texas Constitution provides that the Court of Criminal Appeals's construction of article V, section 6 is final and binding upon this court in all criminal appeals. *See* TEX. CONST. art. V, § 5(a) (stating that "the Court of Criminal Appeals shall have final appellate jurisdiction coextensive with the limits of the state, and its determinations shall be final, in all criminal cases ...");  *Brooks*, 323 S.W.3d at 912, n. 48 (specifically invoking article V, section 5(a) of the Texas Constitution); *State of Texas ex rel. Vance v. Clawson*, 465 S.W.2d 164, 168 (Tex.Crim.App.1971) (" 'The Court of Criminal Appeals is the court of last resort in this state in criminal matters. This being so, no other court of this state has authority to

---

5. It is not necessary to address all of the analysis contained in the plurality and concurring opinions in *Brooks*. *See Brooks*, 323 S.W.3d at 898–907; *id.* at 912–26 (Cochran, J., concurring).

6. Likewise, the current version of article 44.25 simply provides that "the courts of appeals or the Court of Criminal Appeals may reverse the judgment in a criminal action, as well upon the law as upon the facts." TEX. CODE CRIM. PROC. ANN. art 44.25.

overrule or circumvent its decisions, or disobey its mandates.' ") (quoting *State of Texas ex rel. Wilson v. Briggs,* 171 Tex. Crim. 479, 351 S.W.2d 892, 894 (1961)); *Gabriel v. State,* 290 S.W.3d 426, 436 (Tex.App.Houston [14th Dist.] 2009, no pet.) (stating that "[a]s an intermediate court of appeals, we are bound by controlling authority from the Court of Criminal Appeals"). Accordingly, my esteemed colleagues err to the extent they suggest that the Court of Criminal Appeals does not have jurisdiction or authority to abolish factual-sufficiency review of Conviction Findings. *See ante* at pp. 620–21, n. 1; *post* at pp. 637–38. The Court of Criminal Appeals is vested with such jurisdiction and authority, and in *Brooks,* the high court exercised both. See *Brooks,* 323 S.W.3d at 895, 904–05; *id.* at 912–13 (Cochran, J., concurring). Either. expressly or impliedly, the five judges in *Brooks* concluded that this action is consistent with the United States Constitution, the Texas Constitution, and applicable statutes.

Under the principles of vertical stare decisis contained in the Texas Constitution, this court must follow the *Brooks* decision, even if individual justices on this intermediate court disagree with the decision. *See* TEX. CONST. art. V, § 5(a); *Clawson,* 465 S.W.2d at 168; *Gabriel,* 290 S.W.3d at 436. Though the members of this court are free to voice their disagreement with the *Brooks* decision, they are bound by the Texas Constitution as well as principles of stare decisis and judicial restraint to follow the *Brooks* decision. *See Windom v. State,* 961 S.W.2d 267, 270 (Tex.App.-Houston [1st Dist.] 1997) (Taft, J., concurring) (stating that "as an intermediate appellate court, we are bound by decisions of the Court of Criminal Appeals

even when they lead to manifestly unjust results, as in the present case" and following a high court precedent, while at the same time urging the high court to reexamine it), *rev'd,* 968 S.W.2d 360 (Tex.Crim. App.1998). Parties and their attorneys likewise are free to urge a high court to overrule its prior precedent. And, the people of Texas, of course, may voice their disagreement by amending the Texas Constitution; indeed, they have amended article V, section 6 of the Texas Constitution four times since 1978. *See* TEX. CONST. art. V, § 6 (amended 1978, 1981, 1985, 2001); *id.* art. XVII § 1 (providing mechanism for the people of Texas to amend the Texas Constitution). This manner of effecting change in our laws is woven into the fabric of our constitution; though it is not perfect, it brings order and certainty to the process. Whatever the members of this court may conclude about the logic or soundness of the *Brooks* decision, in the final analysis, the Court of Criminal Appeals gets to decide. This is the regime the people of Texas have chosen, and by following it, lower court judges honor their oaths of office.

## II. SUFFICIENCY OF THE EVIDENCE SUPPORTING APPELLANT'S CONVICTION[7]

In its opinion, the plurality refers at various times to the "offense of failure to comply with sex offender registration requirements." *See ante* at pp. 618, 620, 621. By doing so, the plurality conflicts with *Young v. State,* in which the Court of Criminal Appeals held that article 62.102 of the Code of Criminal Procedure, entitled "Failure to Comply With Registration Requirements," is an umbrella statute that creates numerous criminal offenses rather than a single offense. *See* TEX.CODE CRIM.

---

**7.** Because Justice Seymore joins Part II of this opinion, this portion is a majority and

constitutes the opinion of the court. *See post* at p. 635.

PROC. ANN. art 62.102 (West 2006); *Young v. State,* 341 S.W.3d 417, 424–25 (Tex. Crim.App.2011). The analysis in today's plurality opinion differs significantly from the analysis in this court's opinion on original submission. *See Green v. State,* 321 S.W.3d 799, 802–05 (Tex.App.-Houston [14th Dist.] 2010), *vacated by,* No. PD–1685–10, 2011 WL 303818, at *1 (Tex.Crim. App. Jan. 26, 2011). Therefore, an analysis of the legal sufficiency of the evidence is set forth in this opinion.

In his first issue, appellant challenges the factual sufficiency of the evidence supporting his conviction. Appellant filed his appellate brief before a majority of the judges on the Court of Criminal Appeals abolished factual-sufficiency review as to Conviction Findings and held that legal-sufficiency is the only type of evidentiary review available as to these findings. *See Howard,* 333 S.W.3d at 138 n. 2; *Brooks* at 895, 904–05; *id.* at 912–13 (Cochran, J., concurring). Therefore, it is appropriate to review appellant's first issue as a challenge to the legal-sufficiency of the evidence supporting his conviction.

■ In evaluating a legal-sufficiency challenge, we view the evidence in the light most favorable to the verdict. *Wesbrook v. State,* 29 S.W.3d 103, 111 (Tex.Crim.App. 2000). The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellant's evidence outweighs the State's evidence. *Wicker v. State,* 667 S.W.2d 137, 143 (Tex.Crim.App. 1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State,* 819 S.W.2d 839, 846 (Tex.Crim. App.1991). The jury, as the trier of fact, "is the sole judge of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State,* 991 S.W.2d 267, 271 (Tex.Crim.App.1999). The jury may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim.App. 1986). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing party. *Turro v. State,* 867 S.W.2d 43, 47 (Tex.Crim.App.1993). Therefore, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *McDuff v. State,* 939 S.W.2d 607, 614 (Tex. Crim.App.1997).

## A. Analysis—April 2007 Address Change

■ "If a person required to register under [chapter 62] intends to change address, ... the person shall, not later than the seventh day before the intended change, report in person to the local law enforcement authority designated as the person's primary registration authority by the department and to the ... officer supervising the person and provide the authority and the officer with the person's anticipated move date and new address." Tex.Code Crim. Proc. Ann. art. 62.055(a) (Vernon 2006). If a person required to register under chapter 62 fails to comply with this registration requirement ("Requirement"), he commits a criminal offense. *See id.* arts. 62.055(a) 62.102 (Vernon 2006). The only offense charged in the indictment was failure to comply with the Requirement. Under article 62.055(a), appellant was also required to provide proof of his new address to the applicable local law enforcement authority for his new address within seven days after changing the address or on the first date that the applicable authority allows appellant to report. *See id.* art. 62.055(a). But, appellant was not charged with violating this registration requirement. Appellant was only charged with violating the Requirement. There is no dispute that appellant was required to register; the issue

is whether the evidence is legally sufficient to support a finding that appellant failed to comply with the Requirement.

Because appellant did not stipulate to any of his prior convictions for indecency with a child, the State called Officer Robert Allwardt as its first witness. Allwardt gave expert fingerprint identification testimony to show that appellant is the same person convicted three times for indecency with a child in the judgments that the State introduced into evidence. The State had to prove at least two such convictions as part of its burden of proof under the indictment in this case. The State then called Sergeant Rodney Guthrie to the stand. Guthrie testified as follows:

- He is a police officer with the Waxahachie Police Department, who supervises and manages the sex offender registration unit.

- When sex offenders living in Waxahachie first come in to register, they fill out some documentation, and the sex offender registration unit reviews the registration requirements with the offenders so they understand them.

- After his initial registration appellant had a duty to come in person to the unit every 90 days to verify his registration.

- In addition to such periodic verifications, registered sex offenders are also required to come in person to Guthrie's office to give notice of any change in their residence address, employment status, telephone numbers, or emergency contacts.

- As to changes in the residence addresses of registered sex offenders, "[p]rior to any address change that [they] have, [they] must notify the registering agency seven days prior to any change that [they are] going to make."

- Registered sex offenders cannot move whenever they want to do so; rather they "have seven days notification that [they] must give the agency."

- When appellant first registered in Waxahachie in September 2005, Guthrie reviewed several forms with appellant, including a form that specifies the registration requirements that the sex offender must follow ("Form"). Guthrie reviewed all of these requirements with appellant, as shown by appellant initialing each requirement on the form and signing the form, which was admitted into evidence.

- The Form's main reason is to spell out each requirement that the registered sex offender must follow. The Form "specifically says that [appellant] must give seven days prior notice of his move or intended move before making that move."

- Appellant "had to provide the seven days [notice] prior to any move."

- Appellant did not provide seven days prior notice of his move from 602 Highland Avenue to 1570 Holder Road.

In sum, Guthrie's testimony covered four topics: (1) appellant's knowledge of the reporting requirements; (2) appellant's prior conformity with all reporting requirements; (3) appellant's visit on May 3, 2007, regarding the change in address and Guthrie's discovery that appellant had not given notice before this address change; and (4) Guthrie's discussion with the property manager for appellant's residence. Guthrie's testimony shed no light on whether appellant had an intention to move from the Highland Avenue address. The State's final witness was Billy Graham, the property manager at 602 Highland Avenue. Graham testified: (1) he observed appellant landscaping and planting flowers around the house in March or

April 2007; (2) Graham had not received a rent payment for the Highland Avenue address in the month of April, which was not unusual; (3) on or about April 15, 2007, Graham discovered appellant's and appellant's wife's belongings had been moved from the house—but he did not witness either party moving the belongings; (4) appellant did not tell Graham he was moving out; and (5) Graham rented the house to another tenant without informing appellant or appellant's wife. Both Guthrie and Graham testified they were aware appellant spent long periods of time working in Arizona.

The defense called one witness, Catherine Hunt, appellant's wife. Hunt testified she moved from the Highland Avenue address without telling appellant until he returned from Arizona. Under the legal-sufficiency standard of review, we presume that the jury did not believe Hunt's testimony indicating that appellant had no intent to change his address that would trigger the Requirement. Nonetheless, reviewing all of the evidence at trial in the light most favorable to the jury's verdict, we find no evidence that appellant ever had an intent to change his address that he failed to report not later than the seventh day before the date of the intended change of address. There are various ways that a person's belongings can be moved out of a residence in the absence of that person intending to move. The testimony of Guthrie and Graham that appellant had moved out of the 602 Highland Avenue residence on or about April 15, 2007, is not evidence that appellant had an intent to move out during this time that he failed to report at least seven days before the date of the intended move.

The testimony at trial shows that Guthrie and the prosecuting attorney both believed that registered sex offenders have to give at least seven days' advance notice before any address change, regardless of whether the registered sex offender has any intent to move. Guthrie testified that appellant was told he had to give seven days' prior notice of all address changes. But, the Requirement is triggered only "[i]f a person required to register under this chapter intends to change address." Tex.Crim. Proc.Code Ann. Art. 62.055(a). In addition, the deadline for reporting this intended address change is not seven days before the date on which the move actually occurs; rather, the deadline is seven days "before the intended change." *Id.* There are various situations in which a registered sex offender's address may change without the offender having any intent to change address prior to the actual change of address. The offender may be barred from his current residence without warning or someone else may move the offender's property out of the residence and to another address without the offender's knowledge. Viewing all the evidence in the light most favorable to the verdict, we conclude that, based on that evidence and reasonable inferences therefrom, no rational fact finder could have found beyond a reasonable doubt that appellant ever had an intent to change his address in April 2007 that he failed to report not later than the seventh day before the date of the intended address change. *See Simpkins v. State,* 300 S.W.3d 860, 862–65 (Tex.App.-Texarkana 2009, no pet.) (holding evidence was legally insufficient to support conviction for violation of sex offender registration requirement); *Martin v. State,* 252 S.W.3d 803, 806–09 (Tex.App.-Texarkana 2008, no pet.) (same as *Simpkins*); *Rios v. State,* 141 S.W.3d 750, 753–54 (Tex.App.-Corpus Christi 2004, pet. ref'd) (same as *Simpkins*).

**B. Analysis—November 2006 Address Change**

■ The State also contends the jury could have found appellant committed the offense as charged because there was some testimony indicating appellant may have violated the reporting requirements when he initially moved to the Highland Avenue address. Guthrie testified appellant reported his change of address on November 16, 2006. But, Graham stated appellant moved into 602 Highland Avenue on November 12, 2006. According to the State's argument, such testimony allows the jury to convict appellant of the alleged violation because the jury charge included "on or about" language. Guthrie, however, indicated in his testimony that appellant complied with the reporting requirements when he moved to the Highland Avenue address in November 2006. For the same reasons stated above as to the April 2007 change of address, the evidence is legally insufficient to prove that appellant failed to report an intended address change in November 2006.

Most of the testimony and other evidence as well as the arguments of counsel during trial concern the failure to report an intended move in April 2007. The witnesses only briefly discussed the November move and the State merely mentioned it in passing during its closing argument. Guthrie only discussed November briefly and testified appellant had complied with the registration requirements. The first time the jury heard mention of any dates regarding the November move was in the context of appellant following the registration requirements. Graham testified appellant moved into the Highland Avenue address on November 12, 2006, but based that testimony on a receipt for the rent paid by appellant's parents. Graham did not testify to seeing appellant living at the house on November 12, 2006. Hunt stated she moved into the house the week before Thanksgiving. Viewing all the evidence in the light most favorable to the verdict, we conclude that, based on that evidence and reasonable inferences therefrom, no rational fact finder could have found beyond a reasonable doubt that appellant ever had an intent to change his address in November 2006 that he failed to report not later than the seventh day before the date of the intended address change. *See Simpkins,* 300 S.W.3d at 862–65; *Martin,* 252 S.W.3d at 806–09; *Rios,* 141 S.W.3d at 753–54.

Under the applicable standard of review, the evidence is legally insufficient to support appellant's conviction. *See Simpkins,* 300 S.W.3d at 862–65; *Martin,* 252 S.W.3d at 806–09; *Rios,* 141 S.W.3d at 753–54. Accordingly, appellant's first issue is sustained. The trial court's judgment is reversed, and a judgment of acquittal is rendered.[8]

## III. CONCLUSION

The Court of Criminal Appeals is vested with the jurisdiction and authority to abolish factual-sufficiency review of Conviction Findings, and it did so in *Brooks.* In the case under review, the plurality opinion is not faithful to this court's analysis on original submission, and contrary to precedent from the Court of Criminal Appeals, the plurality states that article 62.102 contains a single offense. *See* TEX.CODE CRIM. PROC. ANN. art 62.055(a) (West Supp. 2010); *Young,* 341 S.W.3d 417, 424–25. Accordingly, I do not join the plurality's analysis. Nonetheless, the evidence is legally insufficient to support appellant's conviction, as set forth in Part II, which portion, joined by Justice Seymore, is the majority opinion of the court.

8. Because the court sustains appellant's first issue, the court need not and does not address appellant's second issue.

ANDERSON, J., plurality.

SEYMORE, J., concurring.

CHARLES W. SEYMORE, Justice, concurring.

I concur with the plurality's judgment. I write separately to address any confusion about this court's constitutionally mandated conclusive jurisdiction over appellate review for factual sufficiency of the evidence.[1] Apparently, the undersigned and the author of the plurality opinion in this case are the only members of this court who have demonstrated a willingness to defend this court's conclusive jurisdiction over factual sufficiency of the evidence in criminal cases. As jurists, we have a sworn duty to protect and defend the Texas Constitution and this court's legitimately conferred jurisdiction to the extent necessary to provide full justice for all litigants. See Pittsburgh–Corning Corp. v. Askewe, 823 S.W.2d 759, 761 (Tex. App.-Texarkana 1992, no writ) (quoting Laker Airways v. Sabena, Belgian World Airlines, 731 F.2d 909, 927, 930–31 (D.C.Cir.1984)). This is our duty even when the highest court for criminal appeals in Texas seemingly disregards a constitutional protection afforded to all Texans.

In her concurring opinion[2], Justice Frost remonstrates that we are bound by the Texas Constitution to follow the decision of the Court of Criminal Appeals in Brooks v. State, 323 S.W.3d 893, 895 (Tex. Crim.App.2010) (Hervey, J., joined by Keller, Keasler, & Cochran, JJ., plurality op.) (overruling Clewis v. State, 922 S.W.2d 126 (Tex.Crim.App.1996)); id. at 926 (Cochran, J., concurring, joined by Womack, J.) (same conclusion as plurality). However, we are not gagged, and it is lamentable

that only a very short list of intermediate appellate court justices have questioned the decision of the Court of Criminal Appeals to "abolish" appellate review for factual sufficiency of the evidence in criminal cases. See Howard v. State, 333 S.W.3d 137, 138 n. 2 (Tex.Crim.App.2011) (citing Brooks and commenting, "The appellant also argues that the evidence was factually insufficient, but since the appellant's brief was submitted we have abolished factual-sufficiency review").

Recently, I called for en banc review of this court's decision to follow, without question, the Court of Criminal Appeals's decision to "abolish" factual-sufficiency review in criminal cases. See Temple v. State, 342 S.W.3d 572 (Tex.App.-Houston [14th Dist.] 2010, no pet. h.) (Seymore, J., dissent to denial of reh'g en banc (May 24, 2011)). In my dissent to denial of en banc review, I identified and described analytical errors committed by the plurality in Brooks. Id. at 649–53. In response to the Brooks decision, some of my colleagues argue that the Court of Criminal Appeals has hierarchical authority over this court, and we must accede to that court's pronouncements of law. However, no member of the appellate judiciary in Texas has directly addressed my criticisms of the Brooks plurality opinion. Accordingly, I invite all members of this court and any member of the Texas appellate judiciary to defend the Brooks plurality's decision to "abolish" factual-sufficiency review in criminal cases and respond directly to my criticisms outlined below.

**The Brooks plurality's stated reasons for discarding factual-sufficiency review are unsupportable.**

Clewis represented a compromise between long-standing deference to the

---

1. "[T]he decision of [Texas courts of appeals] shall be conclusive on all questions of fact brought before them on appeal or error." Tex. Const. art. V, § 6(a).

2. I join in Part II of Justice Frost's concurring opinion.

jury's verdict and a criminal defendant's constitutional right to appellate review of questions of fact. The appellate court entertained qualified deference to the jury's assessment of the weight, credibility, or reliability of the admittedly legally-sufficient evidence. *Brooks,* 323 S.W.3d at 928 (Price, J., dissenting). When viewing the evidence in a neutral light, an appellate court was not required to resolve every conflict in the evidence, or draw every inference from ambiguous evidence, in favor of the defendant's guilt just because a rational jury could have drawn such an inference; the court accepted the proposition that qualified deference does not convert factual-sufficiency review into legal-sufficiency review. *See id.* at 929 (Price, J., dissenting). Consequently, for many years, appellate courts concluded there was no inherent conflict in the factual-sufficiency standard of review when an appellate court is "deferential" to the jury's verdict while neutrally considering and weighing all of the evidence in the record. However, the *Brooks* plurality concluded that the *Clewis* requirement of deference to the jury as the sole judge of a witness's credibility and the weight to be given testimony eliminates viewing the evidence in a "neutral light." *Id.* at 894, 902 (plurality op.) (overruling *Clewis,* 922 S.W.2d 126). Thus, the Court of Criminal Appeals created a conundrum. The judges on the Court of Criminal Appeals could not reconcile the concept of reviewing the evidence in a neutral light, as prescribed in *Tibbs,* with lengthy Texas jurisprudence, both civil and criminal, according much deference to the jury's determinations of weight and credibility. The *Brooks* plurality referred to *Lancon v. State,* 253 S.W.3d 699 (Tex.Crim.App. 2008), as the final nail in the coffin for factual-sufficiency review. *Id.* at 901–02 (plurality op.); *see also id.* at 925–26 (Cochran, J., concurring). Those judges

concluded that the *Clewis* standard of review for factual sufficiency is indistinguishable from the standard of review for legal sufficiency prescribed in *Jackson. Id.* at 895, 901–02 (plurality op.). In support of eliminating appellate review of the evidence for factual sufficiency, the *Brooks* plurality created two straw horses: (1) troubling double-jeopardy problems are presented because the *Clewis* factual-sufficiency standard of review is barely distinguishable from the Jackson legal-sufficiency standard; and (2) the non-deferential standard in *Clewis* could violate the right to trial by jury under the Texas Constitution. *Id.* at 902–06.

First, relative to double jeopardy, a court may set aside a conviction for any unspecified reason and order a new trial because initial jeopardy continues and the case is restored to its position before the former trial. *See Lofton v. State,* 777 S.W.2d 96, 97 (Tex.Crim.App.1989). The risks of double jeopardy following reversal based on factual insufficiency were fully clarified by the United States Supreme Court in *Tibbs v. Florida,* 457 U.S. 31, 40–44, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). When an appellate court sits as a "thirteenth juror" and, after weighing the evidence in a neutral light without deference to the jury's resolution of conflicting evidence, determines the evidence is factually insufficient to support conviction, an acquittal has not occurred, but a "deadlocked jury." *Id.* at 42, 102 S.Ct. 2211. Therefore, there is no double jeopardy risk. *Id.* **The Double Jeopardy Clause does not prevent an appellate court from granting a convicted defendant an opportunity to seek acquittal through a new trial. *Id.* Consequently, it is acutely ironic that the Texas Court of Criminal Appeals relies on the Double Jeopardy Clause to "abolish" a Texan's state constitutional right to appellate review of questions of fact.** The judges

who formed the *Brooks* plurality were so focused on resolving the analytical conundrum created by *Clewis* that they failed to acknowledge the difference between a constitutional guarantee of appellate review versus a standard of review gleaned under the principles of stare decisis. For example, the plurality concluded, "We believe that these and the reasons given by the Florida Supreme Court for abandoning its factual-sufficiency standard are good reasons for discarding the confusing and contradictory *Clewis* factual-sufficiency standard." *Brooks*, 323 S.W.3d at 905 (plurality op.). The plurality failed to acknowledge the fact that Florida does not have a similar constitutional guarantee of appellate review for questions of fact.

Second, there is persistent irony relative to the *Brooks* plurality's concern that application of "a non-deferential standard could violate the right to trial by jury under the Texas Constitution." *Id.* at 905 (plurality op.). The *Brooks* plurality placed unnecessary emphasis on the statutory language establishing the jury as the exclusive judge of the facts and weight to be given evidence. *Id.* at 908 (plurality op.) (citing Tex.Code Crim. Proc. Ann. arts. 36.13 (West 2007), 38.04 (West 1979); *Watson v. State*, 204 S.W.3d 404, 409 (Tex. Crim.App.2006)). This analytical error results from an overbroad interpretation, contrary to the constitutional mandate and statutory authorization for this court to reverse a criminal conviction "as well upon the law as upon the facts." Tex. Const. art. V, § 6(a); Tex.Code Crim. Proc. Ann. art. 44.25 (West 2006).

In justification of its landmark decision, the *Brooks* plurality opined that the Court of Criminal Appeals had never tolerated the suggestion that an appellate court could simply disagree with the jury's verdict. The plurality remonstrated, "Thus, the only way to retain a factual-sufficiency standard ... would be to allow reviewing courts to sit as 'thirteenth jurors.' However, our factual-sufficiency decisions have consistently declined to do this." *Brooks*, 323 S.W.3d at 905 (plurality op.) (citing *Watson*, 204 S.W.3d at 416). Consequently, without a reason, other than purported adherence to stare decisis, the Court of Criminal Appeals chose to ignore instructions and admonition of the United States Supreme Court in *Tibbs*. How about the simple proposition that the jurisdiction and authority of the Court of Criminal Appeals to establish standards for appellate review of the evidence does not infuse the Court of Criminal Appeals with power to "abolish" an express constitutional guarantee of conclusive intermediate court appellate review of questions of fact? **There may not be any meaningful distinction between *Jackson v. Virginia* legal-sufficiency review and factual-sufficiency review under *Clewis*, but this conundrum created by the Court of Criminal Appeals should not have resulted in disgorgement of a Texan's right to appellate review of questions of fact as *questions of fact*. The simple and logical resolution of the *Clewis* conundrum would have been to fully adopt the standard of review for factual sufficiency prescribed by the same United States Supreme Court that prescribed the standard of review for legal sufficiency of the evidence.** *See generally Tibbs*, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652. Moreover, it should be obvious to all jurists that a convicted criminal defendant is not concerned about preserving the jury's verdict. The *Brooks* plurality can be assured that a convicted criminal defendant will not argue appellate review of the evidence in a neutral light violates his right to a trial by jury!

**The *Jackson v. Virginia* standard of review for legal sufficiency does not fulfill a Texan's constitutional right to appellate review of his questions of fact.**

In an effort to explain their unquestioning acquiescence to *Brooks*, some of my

colleagues readily accept the proposition that the Jackson standard of review for legal sufficiency of the evidence covers any questions of fact raised by an appellant. I would gently suggest that those members of the court fail to acknowledge the unique constitutional duty of Texas courts of appeals to decide questions of fact by weighing all of the evidence. *See* Tex. Const. art. V, § 6(a). This is true because a question of fact as described in the factual-conclusivity clause is a "legal term of art signifying 'questions of weight and preponderance of evidence.'" *Cain v. State*, 958 S.W.2d 404, 408 (Tex.Crim.App.1997) (quoting *Combs v. State*, 643 S.W.2d 709, 715 (Tex.Crim.App.1982)). Under Jackson, "the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution." *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781. The appellate court completely and totally defers to the jury's weight and credibility determinations. *Id.* at 319 & n. 13, 326. The evidence is not weighed, and a successful challenge to legal sufficiency of the evidence results in acquittal, not a new trial. *See Tibbs*, 457 U.S. at 41–42, 102 S.Ct. 2211. Whether the evidence is legally sufficient under Jackson *"is of course wholly unrelated to the question of how rationally the verdict was actually reached.* ... [T]he standard announced today ... does not require scrutiny of the reasoning process"* used by the fact-finder. *Jackson*, 443 U.S. at 319 n. 13, 99 S.Ct. 2781 (emphasis added). Succinctly, evidence is legally insufficient when the "only proper verdict" is acquittal. *Tibbs*, 457 U.S. at 42, 102 S.Ct. 2211. The United States Supreme Court clearly instructed state courts of appeals not to confuse the two standards of review.

A reversal on [a factual-sufficiency] ground, unlike a reversal based on [legally-]insufficient evidence, *does not mean that acquittal was the only proper verdict.* Instead, the appellate court sits as a "thirteenth juror" and disagrees with the jury's resolution of the conflicting testimony. This difference of opinion no more signifies acquittal than does a disagreement among the jurors themselves. A deadlocked jury, we consistently have recognized, does not result in an acquittal barring retrial under the Double Jeopardy Clause. Similarly, an appellate court's disagreement with the jurors' *weighing of the evidence* does not require the special deference accorded verdicts of acquittal.

*Id.* at 42–43, 102 S.Ct. 2211 (citations and footnotes omitted) (emphasis added).

It is also obvious that the United States Supreme Court expressly rejected the contention (accepted as true by the *Brooks* plurality) that a "distinction between the weight [(factual sufficiency)] and [legal] sufficiency of the evidence is unworkable," noting that "trial and appellate judges commonly distinguish between the weight [(factual sufficiency)] and [legal] sufficiency of the evidence" and the Due Process Clause "sets a *lower limit* on an appellate court's definition of evidentiary sufficiency." *Id.* at 44–45, 102 S.Ct. 2211 (emphasis added).

My colleagues should question why the *Brooks* plurality would fully embrace the admonition and instruction from the United States Supreme Court in Jackson but ignore clear definitions and instructions from that same court in *Tibbs* when responding to a request for constitutionally guaranteed appellate review of the evidence for factual sufficiency. Obviously, there is no factual-sufficiency component in the standard of review for legal sufficiency prescribed by the United States Supreme Court in *Jackson*. Again, I posit to my colleagues that the conclusion is

inescapable: the Court of Criminal Appeals has disgorged Texans of a constitutional right that implicates due process of law in criminal cases and usurped this court's conclusive jurisdiction over factual sufficiency of the evidence in criminal cases.

Apparently concerned about my vociferous opposition to the Court of Criminal Appeals's decision to "abolish" appellate review of questions of fact guaranteed by the Texas Constitution, Justice Frost suggests intermediate appellate court judges "honor their oaths of office" by following the dictates or pronouncements of the Court of Criminal Appeals. I respectfully respond that the highest duty under the judicial oath of office is to protect and defend the Texas Constitution.[3] Moreover, in response to my colleague, I submit that the plain language in Article 5, Section 6 of Texas Constitution does not limit intermediate courts of appeals to points of error pertaining to sufficiency of evidence to support affirmative defenses in criminal cases. My colleague previously opined, "In interpreting the Texas Constitution, Texas courts rely heavily on the literal text and must give effect to its plain language." *Robinson v. Crown Cork & Seal Co., Inc.*, 251 S.W.3d 520, 541 (Tex.App.-Houston [14th Dist.] 2006) (Frost, J., dissenting). The Court of Criminal Appeals previously acknowledged this court's conclusive jurisdiction over factual sufficiency and further acknowledged that the Court of Criminal Appeals does not have jurisdiction or constitutional authority to "abolish" factual-sufficiency review in criminal cases. *See Laster v. State*, 275 S.W.3d 512, 518–19 (Tex.Crim.App.2009); *Bigby v. State*, 892 S.W.2d 864, 872–75 & n. 3 (Tex.Crim.App. 1994); *Ex parte Schuessler*, 846 S.W.2d

850, 852–53 (Tex.Crim.App.1993). Moreover, the Court of Criminal Appeals cautioned against a back-door effort to undermine this constitutional imperative.

> [I]t [is] not appropriate for this Court to create a standard of review which is in conflict with the language of our State Constitution.

*Meraz v. State*, 785 S.W.2d 146, 152 (Tex. Crim.App.1990) (the court expressed no opinion regarding the role of courts of appeals in reviewing sufficiency of the evidence relative to proof of the elements of an offense). In his concurring opinion in *Ervin v. State*, Justice Jennings described the Court of Criminal Appeals's adventure into the conclusive jurisdiction of intermediate courts of appeals. 331 S.W.3d 49, 56–70 (Tex.App.-Houston [1st Dist.] 2010, pet. ref'd) (Jennings, J., concurring). Many legal scholars have expressed concern about this problem. *See* Susan Bleil & Charles Bleil, *The Court of Criminal Appeals Versus the Constitution: The Conclusivity Question*, 23 St. Mary's L.J. 423, 424 (1991).

Finally, some of my colleagues have expressed concern that we risk anarchy if intermediate appellate courts do not adhere to all decisions by the Court of Criminal Appeals. However, I respectfully suggest that greater risk for anarchy ensues when the two highest courts in Texas review the same provision in the Texas Constitution and reach diametrically opposed interpretations. *Compare Howard*, 333 S.W.3d at 138 n. 2 ("[W]e have abolished factual-sufficiency review."), *with Regal Fin. Co., Ltd. v. Tex Star Motors, Inc.*, —— S.W.3d ——, ——, 2010 WL 3277132 (Tex. 2010) ("Because a review of the evidence for factual sufficiency is a power commit-

---

**3.** As Justice Frankfurter succinctly expressed, "A timid judge, like a biased judge, is intrinsically a lawless judge." *Wilkerson v. McCar-* *thy*, 336 U.S. 53, 65, 69 S.Ct. 413, 93 L.Ed. 497 (1949) (Frankfurter, J., concurring).

ted exclusively to the court of appeals, we must remand the issue to that court.").

ANDERSON, J., plurality and FROST, J., concurring and SEYMORE, J., concurring.