**Opinion filed July 7, 2023**



In The

# Eleventh Court of Appeals

_____

## No. 11-21-00262-CR

_____

## ROBERT OLIVER PARMER, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**
**Brown County, Texas**
**Trial Court Cause No. CR27831**

## M E M O R A N D U M   O P I N I O N

The trial court convicted Robert Oliver Parmer of failure to comply with sex offender registration requirements. *See* TEX. CODE CRIM. PROC. ANN. art 62.102(a) (West 2018). The trial court also found "true" a prior felony conviction alleged by the State for enhancement purposes. The trial court assessed Appellant's

punishment at confinement for a term of thirty years in the Institutional Division of the Texas Department of Criminal Justice.

In his sole issue on appeal, Appellant challenges the sufficiency of the evidence supporting his conviction. He contends that the State failed to prove that he intentionally or knowingly failed to comply with the requirement that he report an anticipated change of address in person to the appropriate authority at least seven days prior to said change. He requests that we reverse his conviction and render an acquittal for insufficient evidence. We affirm.

*Background Facts*

Appellant was subject to the change of address requirements of Article 62.055, and because of his two prior convictions for reportable sexually violent offenses, Appellant was required to report on a quarterly basis to law enforcement. *See* CRIM. PROC. arts. 62.055, 62.058(a) (West Supp. 2022). On August 11, 2020, Appellant reported in person to Lori Davis, a records manager at the Brownwood Police Department. During this report, Appellant confirmed that his residence remained the same as was on file—a residence on Vine Street. During this appearance, Appellant indicated his address may change. Davis instructed Appellant to inform her "at that point when it would change." Davis testifed that, after this report, Appellant did not notify her of any change in his address until September 21.

David Simpson, the owner of the registered residence on Vine Street, testified that he instituted eviction proceedings against Appellant. On August 27, 2020, the Justice Court, Precinct 2, of Brown County entered a final judgment against Appellant and "all occupants" of the residence on Vine Street that granted possession of the property to Simpson.[1] The judgment further provided that Simpson would be entitled to a writ of possession "no sooner than the sixth day after the signing of the

---

[1]The record does not reflect when Simpson filed the eviction suit.

Judgment," or September 2. Seven days later, on September 3, 2020, the Justice Court issued a writ of possession. Simpson testified that Appellant had vacated the residence by the sixth day as required.

An officer of the Brownwood Police Department conducted a check of the registered residence on August 30, 2020, following a report by Appellant of an unauthorized individual on the property. The officer testifed that the home appeared vacant at that time, and that he did not observe Appellant there.

Sandra Garcia, an administrative assistant for sex offender registration for the Early Police Department testified that on August 31, 2020, Appellant appeared in person at the direction of a local church. The church required Appellant to go to the police department for a wanted persons check in order for him to receive the church's assistance to pay for lodging at the Royal Inn in Early. Appellant did not inquire about registering an address in Early at that time. After verifying his information, Garcia discovered that Appellant was a sex offender registered in Brownwood. When questioned by Garcia, Appellant claimed that the Brownwood Police Department knew of his presence in Early. Garcia instructed him to contact Davis. Garcia later telephoned Davis to question her about her knowledge of Appellant's attempt to reside at the Royal Inn, and Davis informed her that she was not aware of his stay in Early.

On September 8, 2020, Officer Zane Taylor of the Brownwood Police Department unsuccessfully attempted to locate Appellant at his registered address on Vine Street. With information regarding his potential presence at the Royal Inn, Officer Taylor visited the hotel at which time hotel staff informed him of Appellant's check-out three days prior on September 5.

On September 15, 2020, Brownwood Police Department Investigator Brian Rice discovered during a fraud investigation that Appellant was living with another person at an RV Park. Appellant stated that he was in fact living there, and despite

3

multiple excuses as to why he was unable to contact Davis to update his address, he admitted to knowing he was required to do so. Appellant told Investigator Rice that he had only been "out of the [Vine Street address] for about a week." Appellant also confirmed his stay at the Royal Inn and his ownership of a Jeep sufficient for transportation during the time in question. On September 21, 2020, Appellant was arrested on an active warrant after appearing at the Brownwood Police Department to "let [Davis] know his address was changing."

*Analysis*

In his sole issue, Appellant challenges the sufficiency of the evidence supporting his conviction that he intentionally or knowingly failed to report an intended change of address. Appellant asserts that, due to the narrow manner and means charged in the indictment and an involuntary eviction, a factfinder could not reasonably or rationally have inferred that Appellant intended to change his address or had notice to report an anticipated new address.

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight witness testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). When the record supports conflicting inferences,

4

we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

We measure sufficiency of the evidence by the elements of the offense as defined in a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.

A person commits the offense of failure to comply with registration requirements if the person "is required to register and fails to comply with any requirement" of Chapter 62 of the Texas Code of Criminal Procedure. *See* CRIM. PROC. art. 62.102(a); *Young v. State*, 341 S.W.3d 417, 425 (Tex. Crim. App. 2011) ("Article 62.102 is a generalized 'umbrella' statute that criminalizes the failure to comply with any of the registration requirements set out in Chapter 62.").

Under Article 62.055, a person with a reportable conviction must inform the proper authority of any change of address. CRIM. PROC. art. 62.055. The statute provides alternative manners and means by which a person can violate Article 62.055(a): (1) failure to report a change of address "not later than the seventh day *before* the intended change" or (2) failure to report "not later than the . . . seventh day *after* changing the address[.]" *Id.* art. 62.055(a) (emphasis added); *see Young*, 341 S.W.3d at 427 ("Reporting a change of address 'not later than the seventh day before the intended change' and 'not later than the . . . seventh day after changing the address' are . . . alternative manners and means of committing a single offense.").

The indictment alleges that Appellant failed to report an intended change of address at least seven days before the anticipated change. By specifying a single

manner and means, the State must prove that the offense was committed as charged in the indictment. *Thomas v. State*, 444 S.W.3d 4, 10 (Tex. Crim. App. 2014) (addressing Article 62.055). In this instance, the State had to prove that Appellant failed to report an intended change of address at least seven days before the change under Article 62.055(a).

Appellant contends that evidence was insufficient to support his conviction because the State failed to show that he intended to change his address. He bases this contention on his involuntary eviction from his residence, and because he did not subsequently obtain a sustained residential address, he lacked an anticipated new address. Appellant asserts that he did not acquire a new address until September 21 when he was arrested by the police. He essentially contends that he was never under a duty to report a future change of address because he did not have a new address prior to his arrest. In many respects, Appellant's contention mirrors the position advocated by the dissenting opinion in *Thomas*. 454 S.W.3d at 11–13 (Cochran, J., dissenting). Appellant asks us to "carve out an exception" to *Thomas*. For the reasons set out below, we decline to do so.

A review of the timeline of Appellant's whereabouts during the relevant period reveals conflicting information. Appellant stated, in a letter to the court, that he "squatted" at the residence on Vine Street following his eviction until September 16, and that he began residing at the RV Park on September 17.[2] However, the body-cam video footage of Investigator Rice recorded on September 15 shows Appellant present and admitting to residing at the RV Park on that date. In the same letter, Appellant alleges he that was not evicted from his residence on Vine Street until September 6, and that he subsequently found a short term job at the Royal Inn. Conversely, Simpson testifed that Appellant vacated the residence

---

[2]We note that the trial court took judicial notice of the contents of the clerk's file that included Appellant's letter.

within six days, on September 2, as required by the eviction judgment. Additionally, the testimonies of Officers Taylor and Garcia indicated that Appellant was at the Royal Inn for a temporary stay and checked out on or about September 5. When, as in this case, the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

We first note that the trial court, sitting as the factfinder, was not necessarily bound by the specific date alleged in the indictment to convict Appellant because the indictment used "on or about" language. *See Thomas*, 444 S.W.3d at 9, 11. Here, Appellant was present in justice court when it entered a judgment on August 27 that required him to vacate the registered address on Vine Street. This order gave him notice and a minimum of six days to vacate. However, the justice court did not issue a writ of possession until the seventh day. In his letter to the trial court, Appellant stated that he was not evicted until September 6, and that he squatted at the residence afterwards. Thus, contrary to Appellant's assertion, he was not required to immediately vacate the registered residence on Vine Street.

Simpson testified that Appellant had vacated the registered residence by September 2. Upon that event, Appellant's address changed from the registered residence on Vine Street. Then, there is evidence that Appellant resided at the Royal Inn in Early. According to his own admission, Appellant resided at the Peaches RV Park on September 15, an address other than the registered address on Vine Street. There is evidence that, from August 27 to September 21, Appellant did not notify the Brownwood Police Department of an intended move away from the registered residence on Vine Street.

In *Thomas*, the Texas Court of Criminal Appeals established an inference of intent to change an address where there is evidence that a defendant no longer resides at the registered residence and inhabits a different location. 444 S.W.3d at 10; *see*

7

*Gilder v. State*, 469 S.W.3d 636, 640 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (explaining the effect of *Thomas*); *see also Herrell v. State*, No. 02-16-00432-CR, 2018 WL 1865881, at *3 (Tex. App.—Fort Worth Apr. 19, 2018, pet. ref'd) (mem. op., not designated for publication) (same). The decision in *Gilder* is particularly instructive because it addressed its earlier decision in *Green v. State*, 350 S.W.3d 617 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) wherein the court held that an unintended move would not trigger a failure to report an intended move. *Gilder*, 469 S.W.3d at 639–40 (discussing *Green*, 350 S.W.3d at 630–34). In *Gilder*, the court noted that the holding in *Thomas* abrogated the holding in *Green*.[3] *Id.* at 640. As explained in *Gilder*:

> The high court [in *Thomas*] concluded that, because there was evidence that appellant was living at a new address as of June 25, 2012, the jury reasonably could have concluded that Thomas intended to change [his] address on June 25, 2012, and that he violated article 62.055(a) by failing to report this intended address change on or before June 18, 2012.

*Gilder*, 469 S.W.3d at 640 (discussing *Thomas*, 444 S.W.3d at 10–11).

In *Gilder*, there was no direct evidence that the appellant was living in a new address. *Id.* at 641. Instead, the evidence showed that he was not living at his registered address. *Id.* Relying on *Thomas*, the court concluded that there was sufficient evidence that the appellant was living in a new address because he was not living in the registered residence on a particular date, and that he failed to give the registering authority notice seven days prior to that date. *Id.* Similarly, in *Herrell*, the appellant was told that he had to leave his registered residence on October 17, 2014. 2018 WL 1865881 at *1. He moved out the next day when he was dropped off at a Dollar General to buy a tent in order to live "in a field." *Id.* As was the case

---

[3]The dissenting opinion in *Thomas* favorably cites the holding in *Green*. *Thomas*, 444 S.W.3d at 12–13 (Cochran, J., dissenting).

in *Gilder*, there was no direct evidence of the appellant's new address. *Id.* at *3. Relying on *Thomas* and *Gilder*, the court in *Herrell* held that the evidence was sufficient to establish that the appellant failed to give notice of his intended move by not giving notice of his new address seven days prior to the date he was no longer living at the registered address.[4] *Id.*

It was of no consequence that the State did not prove the appellants' new addresses in either *Gilder* or *Herrell*. *See Gilder*, 469 S.W.3d at 641; *Herrell*, 2018 WL 1865881 at *3. Thus, Appellant is incorrect in his assertion that the State was required to produce evidence that he had a new address in order to establish that he failed to give notice of an intended move. Instead, his absence from the registered residence created an inference under *Thomas* and its progeny that he had a new address. Furthermore, Appellant in fact had a new address on September 15 as evidenced by his admission to Investigator Rice that he lived at the RV park. Additionally, in his letter to the trial court, Appellant stated that he lived at the RV park as of September 17. Appellant's failure to give notice seven days prior to either of these dates, together with the evidence that he no longer lived at the resigtered residence on Vine Street, constituted sufficient evidence that he failed to provide notice of his intended move under Article 62.055. *See Thomas*, 444 S.W.3d at 10–11; *Gilder*, 469 S.W.3d at 641; *Herrell*, 2018 WL 1865881 at *3. In this regard, the record is replete with evidence that Appellant was aware of the requirements to notify the registering authority of an intended move.

Appellant's contention that his lack of a sustained residential address following the eviction would justify a failure to report is inconsistent with the

---

[4]The court in *Herrell* also cited *Burnett v. State* for the proposition that circumstantial evidence showing that the appellant had stopped living at his registered address as of a certain date "permitted an inference that [he] intended to change his address as of that date." *Herrell*, 2018 WL 1865881 at *3 (alteration in original) (quoting *Burnett v. State*, 506 S.W.3d 545, 549 (Tex. App.—Houston [1st. Dist.] 2016, pet. ref'd)).

requirements under Chapter 62.  *See* CRIM. PROC. art. 62.055.  Appellant's formal eviction on August 27 was sufficient to provide notice of the impending change of address, and even without a government issued address to report, his requirement to report the impending change remained.  Because Appellant had sufficient notice and did not report the intended address change until September 21, a factfinder could reasonably and rationally conclude that Appellant violated Article 62.055(a) by failing to report at least seven days before the change.  *See* CRIM. PROC. art. 62.055(a).  We overrule Appellant's sole issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY
CHIEF JUSTICE


July 7, 2023

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.