# NO. 12-22-00316-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *MATTHEW LEROY RISLER,* *APPELLANT* | § | *APPEAL FROM THE 392ND* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *HENDERSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Matthew Leroy Risler appeals his conviction for evading arrest or detention in a motor vehicle. He raises two issues on appeal. We affirm.

## BACKGROUND

Appellant was indicted for the offense of evading arrest or detention in a motor vehicle.[1] The indictment also alleged that Appellant had two prior felony convictions, elevating his punishment level to that of a first-degree felony with a minimum imprisonment term of twenty-five years.[2]

Appellant pleaded "not guilty" to the offense. Prior to trial, the trial court granted Appellant's motion in limine requiring, in relevant part, that the parties refrain from referring to Appellant's extraneous offenses or misconduct during the trial prior to a hearing outside the presence of the jury to determine the admissibility of such evidence.

---

[1] *See* TEX. PENAL CODE ANN. § 38.04(a), (b)(2)(A) (West 2016).

[2] Evading arrest or detention in a motor vehicle as charged is usually a third-degree felony, punishable by imprisonment for a term of no less than two years and no more than ten years. *See id.* §§ 12.34(a) (West 2019), 38.04(b)(2)(A) (West 2016). However, because Appellant pleaded "true" to the State's enhancement allegations regarding his prior felony convictions, the trial court could assess a punishment of either life imprisonment, or imprisonment for a term of no less than 25 years and no more than 99 years. *See id.* § 12.42(d) (West 2019).

The matter proceeded to a jury trial. During the trial, Henderson County Deputy Sheriff Jonathan Barrios, who was the officer that attempted to detain Appellant, testified that he knew Appellant from previous dealings when the deputy was a detention service officer (DSO) at the county jail. Appellant objected that this testimony violated his motion in limine because it could lead to the inference that Appellant was an inmate at the county jail for a prior criminal offense. The trial court held a hearing outside the presence of the jury and Appellant moved for a mistrial. The State agreed Deputy Barrios's answer violated the motion in limine. The trial court ultimately denied the motion for mistrial. The trial continued, and the jury returned a "guilty" verdict. After a hearing on punishment, the trial court assessed punishment at fifty years of imprisonment. This appeal followed.

## MISTRIAL

In his first issue, Appellant argues that the trial court committed reversible error when it denied his motion for mistrial due to a violation of the court's order on his motion in limine.

## Standard of Review

A trial court's denial of a mistrial is reviewed under an abuse of discretion standard, and its ruling must be upheld if it was within the zone of reasonable disagreement. *Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010). We view the evidence in the light most favorable to the trial court's ruling. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). Whether an error requires a mistrial is determined by the particular facts of the case. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999).

Mistrial is the appropriate remedy when error is so prejudicial that expenditure of further time and expense would be futile. *Id.* "Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required." *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). Asking an improper question alone, by itself, seldom will call for a mistrial. *See Hernandez v. State*, 805 S.W.2d 409, 413–14 (Tex. Crim. App. 1990). "A mistrial is required only when the improper question is clearly prejudicial to the defendant and is of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors." *Id.*

"Ordinarily, a prompt instruction to disregard will cure error associated with an improper question and answer, even one regarding extraneous offenses." *Ovalle v. State*, 13 S.W.3d 774,

783 (Tex. Crim. App. 2000). We presume that the jury obeyed an instruction to disregard. *See Archie v. State*, 340 S.W.3d 734, 741 (Tex. Crim. App. 2011).

**Applicable Law**

Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. TEX. R. EVID. 404(b)(1). This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. TEX. R. EVID. 404(b)(2). Rebuttal of a defensive theory such as mistake or accident is also one of the permissible purposes for which relevant evidence may be admitted under Rule 404(b). *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003).

However, even if the evidence is relevant, and the purpose for which it is being offered is permissible under Texas Rule of Evidence 404(b), it may still be excluded under Texas Rule of Evidence 403 if its probative value is substantially outweighed by the danger of unfair prejudice. *Id.* Overlaid on top of this analysis, when a defendant alleges that the trial court erroneously admitted the extraneous offense evidence and the admission should have resulted in a mistrial, we consider the severity of the misconduct, any curative measures taken, and the certainty of conviction absent the misconduct. *See Hawkins*, 15 S.W.3d at 77.

In analyzing the first *Hawkins* factor (essentially a Rule 403 analysis), we evaluate: (1) how compellingly evidence of the extraneous misconduct serves to make more or less probable a fact of consequence—in other words, its inherent probativeness; (2) the potential the extraneous offenses or prior bad acts have to impress the jury in some irrational but nevertheless indelible way; (3) how much trial time the proponent needs to develop evidence of the extraneous misconduct, such that the attention of the factfinder will be diverted from the indicted offense; and (4) how great the proponent's need is for the extraneous misconduct. *See Inthalangsy v. State*, 634 S.W.3d 749, 758 (Tex. Crim. App. 2021).

As with the trial court's denial of a motion for mistrial, its admission of extraneous offense evidence is reviewed for an abuse of discretion. *See Moses*, 105 S.W.3d at 627. Likewise, whether extraneous offense evidence has relevance apart from character conformity, as required by Rule 404(b), is a question for the trial court. *Id.* When a trial court further decides not to exclude the evidence, finding that the probative value of the evidence is not outweighed by the danger of unfair prejudice, this decision too shall be given deference. *Id.*

## Discussion

During the trial, the State established that prior to being a patrol deputy, Deputy Barrios was a DSO at the Henderson County jail. As the State inquired about his duties as a DSO, Appellant objected on relevance grounds and requested a bench conference in conformity with his motion in limine. As a result, while the witness was present, the trial court and counsel agreed that the deputy should state only that he knew Appellant from his previous dealings with him, without adding the fact that he knew him from when he worked as a DSO at the county jail. The State's line of questioning continued as follows:

Q. Did you ask for the defendant's name?

A. Yes, I asked for his name.

Q. What name did he provide?

A. I'd have to refer to my report.

Q. Please do so.

A. Informed me he was Timothy.

Q. Was that his correct name?

A. No, sir.

Q. You said you recognized the defendant by the name of Matthew. How did you recognize him?

A. Recognized him from previous dealings in the -- when I was a detention officer.

THE COURT: Okay. Let's -- ladies and gentlemen of the jury, I'm going to ask you to retire to the jury room.

. . . .

THE COURT: Y'all can be seated.

[DEFENSE COUNSEL]: Your Honor, the defendant would move for a mistrial. The witness violated the State's-- the Defendant's Motion in Limine.

THE COURT: We just talked about this.

[DEFENSE COUNSEL]: We just went over it. I thought it was very clear. And I think that --

THE COURT: State?

[PROSECUTOR]: Your Honor, we discussed it. I thought it was clear up there to just say prior dealings, not mention in the jail.

4

The trial court heard the parties' arguments, conducted further research, took the matter under advisement, and continued with the trial to assess whether it believed the comment affected the proceedings enough to warrant a mistrial. Defense counsel then affirmatively stated that she specifically did not want a limiting instruction when the jury was brought back in because that would call even more attention to the statement. Instead, she agreed with the trial court's proposal that a suitable limiting instruction be placed in the court's jury charge. At the close of evidence, the trial court heard further arguments on the issue, and explained in detail the reasons for denying the motion. The trial court included the following instruction in its charge, to which Appellant agreed as a proper instruction without waiving the challenge to the evidence:

> You are instructed that if there is any testimony before you in this case regarding the defendant having committed other misconduct other than the offense alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other misconduct, if any, and even then you may only consider the same in determining the identity of the defendant, if any, in connection with the offense, if any, alleged against him in the indictment in this case, and for no other purpose.

The trial court ultimately concluded the evidence was relevant and that, even though it was evidence of an extraneous bad act, it was probative of Appellant's identity, and not offered for character conformity. The vehicle was dark with dark tinted windows and a dark dome light. The temporary license tag was obscured and the identifying information on it did not return to any vehicle. The driver did not lower the window all the way when talking with Deputy Barrios. Furthermore, the driver provided a false name, had no identification, and sped away as the deputy believed the driver to be Appellant based on his previous dealings with him. The deputies were unable to apprehend the driver at the time. He reached speeds in excess of 100 miles per hour, and the deputies were unable to close the distance and consequently ceased pursuing him. The driver's identity was the key contested issue in the case, and the trial court acted within its discretion in concluding that the testimony was relevant evidence to establish Appellant's identity as the driver who sped away from Deputy Barrios. *See* TEX. R. EVID. 404(b)(2).

The trial court also conducted an analysis of the *Hawkins* factors, part of which requires a Rule 403 analysis under *Inthalangsy* and concluded that the comment's probative value was

not substantially outweighed by its danger of unfair prejudice. *See **Inthalangsy***, 634 S.W.3d at 758; ***Hawkins***, 15 S.W.3d at 77.

We have already explained the evidence's probative value in the case—Appellant's identity was the key issue in the case. Although the parties agreed that the statement was a violation of the motion in limine and resulted in some prejudice, we conclude that it was minimal. There was no direct evidence submitted that Deputy Barrios recognized the Appellant due to incarceration in the detention center during the time Deputy Barrios was a detention officer. *See **Bledsoe v. State***, 21 S.W.3d 615, 624 (Tex. App.—Tyler 2000, no pet.) (holding mistrial unwarranted in response to answer given by investigator that he served a warrant on defendant in county jail, because prosecutor did not necessarily solicit that response, investigator did not elaborate on reason for incarceration, and statement not emphasized by parties).

The entire line of questioning lasted less than a minute. Furthermore, as the trial court noted, no one knew why Appellant was in jail, for how long, or the nature of the alleged offense. It was not even certain by the deputy's response that he knew him as an inmate at the jail, although that would be a reasonable inference. The parties specifically decided not to draw further attention to it and moved on to other topics for questioning. *See **Butcher v. State***, No. 12-18-00349-CR, 2019 WL 5656496, at *4 (Tex. App.—Tyler Oct. 31, 2019, pet. ref'd) (mem. op., not designated for publication) (holding mistrial not warranted for limine violation from statement that defendant had been to prison because reference was brief and no mention of his charge, length of term, or circumstances leading to prison sentence). The potential to impress the jury in some irrational way was slight at best, and therefore was unlikely to make an indelible mark upon the minds of the jurors.

The trial court noted that it appeared that the deputy's reference was not intentional. The deputy was a fairly new patrol officer, and this was only his second trial in which he testified. The trial court also noted that the deputy probably did not understand everything that happened during the bench conference on the motion in limine, or even know what a motion in limine was. Moreover, we note that no one specifically instructed him to abstain from making the detention officer reference after the conference, but they assumed he heard it and understood how to respond to the question. Accordingly, we conclude that the trial court acted within its discretion in concluding that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice and that the conduct was not severe.

With respect to the second *Hawkins* factor—curative measures taken—defense counsel stated that she did not initially ask for a limiting instruction on her first relevance objection when the deputy began to describe his duties as a DSO. As she explained, she chose this strategy because she believed the trial court would grant her request for a mistrial. *See Hawkins*, 15 S.W.3d at 77 (describing second mistrial factor). When the deputy subsequently stated that he knew Appellant from his time as a DSO, Appellant immediately objected again and requested a mistrial. The trial court asked whether Appellant wanted a limiting instruction, to which defense counsel replied that she did not because it would draw further attention to the evidence. In other words, she purposefully waived any curative instruction at that time. Instead, the trial court suggested, and defense counsel agreed, that the trial court would address the issue passively in the jury charge. Furthermore, as we discussed above, the trial court addressed the issue by inserting a curative instruction that any such evidence must be proven by a reasonable doubt, and that it may be only used to prove Appellant's identity. *See Ladd*, 3 S.W.3d at 571 (instruction to disregard cured witness's improper reference to defendant's multiple juvenile arrests); *Kemp v. State*, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992) (witness's reference to defendant having "recently been released from the penitentiary" cured by instruction to disregard); *Nobles v. State*, 843 S.W.2d 503, 514 (Tex. Crim. App. 1992) (witness's statement that defendant "didn't want to go back to prison" cured by instruction to disregard).

Finally, under *Hawkins*, we evaluate the certainty of conviction absent the misconduct. *Hawkins*, 15 S.W.3d at 77. The video showed that Deputy Barrios identified Appellant as "Matthew Risler" after the driver provided a different name. Deputy Barrios also testified similarly in court and identified the driver as Appellant in the courtroom. Deputy Ashley Rader, who assisted Deputy Barrios, testified that she spoke with the passenger of the vehicle, who identified herself as "Ashley Risler." Shortly thereafter is when the driver fled. Although this evidence alone would be sufficient, the jury may have questioned how Deputy Barrios knew the driver to be Appellant, somewhat weakening the State's case. This could have been mitigated simply by testimony that he had previous dealings with Appellant without further elaboration. However, he added "as a detention officer." This statement certainly bolstered the State's case as to how Deputy Barrios was familiar with Appellant, and we add that this was a somewhat important task, because the trial court found Deputy Rader was unable to identify Appellant at trial as the driver of the vehicle. We conclude that Appellant's conviction would have been

7

likely absent the misconduct, and we cannot say that the objectionable addition to the testimony had such an extreme and prejudicial effect as to warrant a mistrial.

Accordingly, the trial court's admission of the evidence to show Appellant's identity as the driver of the vehicle and denial of the motion for mistrial was within the zone of reasonable disagreement. Similarly, the trial court acted within its discretion in its Rule 403 and *Hawkins* analysis when it concluded that the evidence's probative value was not substantially outweighed by the danger of unfair prejudice to Appellant. *See id.* We cannot conclude on this record that this is one of those extreme and narrow cases so prejudicial that it could not be cured. *See id.*

Appellant's first issue is overruled.

### SUFFICIENCY OF THE EVIDENCE

In his second issue, Appellant contends that the jury's verdict is unsupported by sufficient evidence.

**Standard of Review**

The *Jackson v. Virginia*[3] legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See Jackson*, 443 U.S. at 315–16, 99 S. Ct. at 2786–87; *see also Escobedo v. State*, 6 S.W.3d 1, 6 (Tex. App.—San Antonio 1999, pet. ref'd). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 320, 99 S. Ct. at 2789; *see also Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most favorable to the verdict. *See Jackson*, 443 U.S. at 320, 99 S. Ct. at 2789; *Johnson*, 871 S.W.2d at 186. A jury is free to believe all or any part of a witness's testimony or disbelieve all or any part of that testimony. *See Lee v. State*, 176 S.W.3d 452, 458 (Tex. App.—Houston [1st Dist.] 2004), aff'd, 206 S.W.3d 620 (Tex. Crim. App. 2006). A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing

---

[3] 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979).

court.  *See Tibbs v. Florida*, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2217–18, 72 L. Ed. 2d 652 (1982).

Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt.  *Rodriguez v. State*, 521 S.W.3d 822, 827 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (citing *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011)).  Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction.  *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).  Juries are permitted to draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial.  *Id.* at 15.  Juries are not permitted to reach conclusions based on mere speculation or factually unsupported inferences or presumptions.  *Id.*  An inference is a conclusion reached by considering other facts and deducing a logical consequence from them, while speculation is mere theorizing or guessing about the possible meaning of facts and evidence presented.  *Id.* at 16.

The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge.  *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried."  *Id.*

**Applicable Law**

A person commits the third-degree felony offense of evading arrest if, while using a vehicle, he intentionally flees from a person he knows is a peace officer lawfully attempting to arrest him.  *See* TEX. PENAL CODE ANN. § 38.04(a), (b)(2)(A) (West 2016).  The state is required to prove that the accused was the person who committed the crime.  *Wilson v. State*, 9 S.W.3d 852, 855 (Tex. App.—Austin 2000, no pet.).  Evidence as to the identity of the perpetrator of an offense can be proved by direct or circumstantial evidence.  *Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986); *Dudley v. State*, 205 S.W.3d 82, 88 (Tex. App.—Tyler 2006, no pet.).  Eyewitness identification is not necessary to determine identity.  *See Earls*, 707 S.W.2d at 85.  Further, no formalized procedure is required for the state to prove the identity of the accused.  *Wilson*, 9 S.W.3d at 855.

A person acts intentionally with respect to the nature of his conduct when it is his conscious objective or desire to engage in the conduct. TEX. PENAL CODE ANN. § 6.03 (West 2021). Proof of a culpable mental state almost always relies upon circumstantial evidence. *Martin v. State*, 246 S.W.3d 246, 263 (Tex. App.—Houston [14th Dist.] 2007, no pet.). A jury may infer intent from the acts, conduct, and remarks of the accused, and from the surrounding circumstances. *Isassi v. State*, 330 S.W.3d 633, 643 (Tex. Crim. App. 2010). As long as the jury's finding of a culpable intent is supported by a reasonable inference, it is within the province of the factfinder to choose which inference is most reasonable. *Id.* In determining whether evidence of intentional evasion exists, the factfinder may consider the speed, distance, and duration of pursuit. *Griego v. State*, 345 S.W.3d 742, 751 (Tex. App.—Amarillo 2011, no pet.).

The accused must know the person from whom he is fleeing is a peace officer attempting to arrest or detain him. *See Jackson v. State*, 718 S.W.2d 724, 726 (Tex. Crim. App. 1986). Proof that an officer is attempting to arrest or detain can be shown by the officer displaying authority through use of a verbal command or by activating the lights and sirens of a police vehicle. *See Duvall v. State*, 367 S.W.3d 509, 513 (Tex. App.—Texarkana 2012, pet. ref'd). Anything less than prompt compliance with an officer's direction to stop may be considered an evasion of arrest. *Smith v. State*, 483 S.W.3d 648, 653 (Tex. Crim. App. 2007).

Finally, "[t]hough the statute requires that the officer have lawful authority to attempt an arrest or detention, the statute contains no exceptions or defenses based upon the officer's conduct before or after a person flees the officer's attempt to arrest or detain." *Day v. State*, 614 S.W.3d 121, 127 (Tex. Crim. App. 2020). "The statute is directed at the conduct of the person, not the officer."

## Discussion

First, Appellant argues that the *Brooks* analysis is incorrect and urges this Court to continue analyzing factual sufficiency under the *Clewis* standard. *See generally Green v. State*, 350 S.W.3d 617, 623-40 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (plurality op.) (Frost and Seymore, J.J., concurring). This Court has followed *Brooks*. *See, e.g.*, *Henderson v. State*, No. 12-11-00231-CR, 2011 WL 5387575, at *1 (Tex. App.—Tyler Nov. 9, 2011, no pet.) (mem. op., not designated for publication) (rejecting argument that we continue analyzing factual sufficiency under the *Clewis* standard in light of *Brooks*). Accordingly, we will not independently consider Appellant's challenge to the factual sufficiency of the evidence.

Deputy Barrios testified that he worked in his marked patrol vehicle at approximately 11:30 p.m. on September 20, 2021. While in a stationary position next to Deputy Rader, who was separately in her own patrol vehicle, he observed a vehicle pass with a temporary license tag that was not clearly visible. He believed the tag was wet, positioned at an odd angle, and he could not immediately decipher the information contained on it. He began to follow the vehicle and shortly thereafter activated his lights indicating to the driver to pull over. The vehicle pulled into a parking lot. Deputy Barrios testified that the identifying tag information he relayed to the dispatcher did not return to any vehicle. Deputy Barrios noticed that the vehicle had dark tinted windows. As he approached the vehicle, the driver lowered the window only approximately an inch or two. The deputy, who wore a department-issued uniform, identified himself as a Henderson County sheriff's deputy. He also asked the driver to lower the window further, who reluctantly complied, but never completely lowered the window. The deputy noticed that the dome light was an unusually darker shade than normal.

On the video, Deputy Barrios shined his flashlight into the vehicle and asked the driver whether his name is "Matthew," who replied, "No." The driver identified himself as "Timothy Lane Fuller." He stated that he did not have his driver's license or proof of insurance in his possession at the time he was detained for the traffic stop. Deputy Rader testified that she followed Deputy Barrios in her own patrol vehicle and assisted in the detention. She approached the passenger side and asked the passenger to identify herself. Deputy Rader testified that the passenger provided the name "Ashley Risler." Deputy Barrios then stated on the video, "It is Matthew Risler," at which point he asked the driver to step out of the vehicle. The vehicle then sped away and the deputies pursued the vehicle, reaching speeds of over 100 miles per hour. They were unable to close the distance and the vehicle escaped. Reviewing all this evidence in the light most favorable to the verdict, we conclude that a rational jury could reasonably conclude that Appellant committed the essential elements of the offense of evading arrest or detention in a vehicle beyond a reasonable doubt.[4] *See* TEX. PENAL CODE ANN. § 38.04(a), (b)(2)(A); *see also* **Jackson**, 443 U.S. at 320, 99 S. Ct. at 2789.

Appellant's second issue is overruled.

---

[4] Furthermore, Appellant pleaded "true" to the enhancement allegations.

## DISPOSITION

Having overruled Appellant's two issues, the judgment of the trial court is ***affirmed***.

**BRIAN HOYLE**
Justice

Opinion delivered July 21, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JULY 21, 2023**

**NO. 12-22-00316-CR**

**MATTHEW LEROY RISLER,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 392nd District Court

of Henderson County, Texas (Tr.Ct.No. CR21-1047-173)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*